THOMAS, Justice
(dissenting) :
With all respect to my colleagues I must dissent from the opinion in this case which, I believe, results in injustice to the petitioner.
The petitioner, Louis Harry Chippas, was tried on an information charging him with grand larceny and with breaking and entering with intent to commit that offense, both alleged to have been committed in Florida. A jury found him guilty of both charges and the judgment was affirmed by the District Court of Appeal. He now seeks review by this court on the theory that the decision conflicts with the one of this court in Benefield v. State, 160 So.2d 706.
Before going immediately to the point involved, we give a brief statement of the factual background of petitioner’s brush with the law from the viewpoint of the State. While he was actually seated in a stolen automobile parked in front of the courthouse in Butler, Choctaw County, Alabama, and his companion was in the probate office undertaking to procure a duplicate tag receipt for a license plate, the sheriff spied the petitioner and ordered a deputy to bring him to the sheriff’s office. According to the evidence subsequently developed, the petitioner knew the car had been stolen and that his companion was a fugitive, therefore needed an alias, further that the car was registered in the companion’s assumed name, though petitioner had been driving it. While both men were being detained “for investigation” the car was searched and in petitioner’s suitcase were found a gun, a number of blank drivers’ licenses and an Alabama license plate. At this point the petitioner was charged with carrying a concealed weapon. But 105 days expired between the incident just related and petitioner’s knowledge of the offense for which he was eventually to be prosecuted.
I think an accurate picture of the whole affair can best be obtained from the record of the testimony of the sheriff.
He first saw the petitioner sitting in a Buick automobile. He had detained for questioning the man who was in the probate office getting the duplicate tag receipt. When the sheriff returned to his office he was told “by some of the boys” that “another one was sitting in the car.” Thereupon he went to the door, took a look, and sent the deputy to fetch the occupant of the car who, it developed, was Chippas.
We observed a conflict between the decision of the District Court of Appeal in the instant case and the decision of the Supreme Court in Benefield v. State, supra, and concluded to entertain the case pursuant to Section 4(2), Article V, of the Constitution, F.S.A. We said there that the validity of *595 an arrest without a warrant must be based upon probable cause which would obtain when the “circumstances within the officer’s knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed.”
I find no such circumstances to have been established here at the time the sheriff sent for Chippas, without jumping to the conclusion that because a person was undertaking to get a duplicate tag receipt, apparently in suspicious circumstances, and another person occupied an automobile in front of the courthouse the two were engaged in unlawful traffic in stolen cars. The record does not indicate to me that at the time of detention there was probable cause to believe that the petitioner was committing a crime. I cannot believe that had the sheriff applied for a search warrant under the facts known to him at the time of the detention he would have been successful. I use the word “detention” purposely to avoid the expression “arrest for investigation” which is not to me meaningful.
In order to justify the search as an incident to the arrest, the arrest itself had to be lawful and the elements of a lawful arrest do not appear in the record. The sheriff testified that at the time petitioner was apprehended he, the sheriff, did not even know that the car in which petitioner was seated had been stolen.
True, the eventual search revealed stolen articles that indicated some offense had been committed, although the description of them and of their connection with the traffic in stolen cars in Alabama is vague indeed as only the license plate appears to have been relevant to such unlawful activities. The court observed that while the petitioner was “under arrest for ‘investigation’ his suitcase was found to contain certain blank driver’s licenses” eventually used as evidence in the present case “and an Alabama license plate allegedly connected with the theft of the automobile” — in Ala-lama. (Italics supplied.) We are not advised how and when it was “alleged” that the license plate was related to the theft of the car. And it should be borne in mind that the offense originally charged against the petitioner was carrying a concealed weapon while eventually he was convicted in Dade County of larceny and breaking and entering a place in that county with intent to commit larceny of other property.
Of course, there is no hint even that there was ground to believe, at the time of the spurious arrest, that the petitioner had committed a crime in Dade County, Florida.
In my opinion the trouble with this case is that the arrest was illegal and consequently the search was unlawful also and no rule is more firmly established than the one that the fruits of an unlawful search cannot cure deficiencies in the search itself. The sheriff testified that the charge was placed against the petitioner as a result of what was found in the search conducted while the petitioner was detained for investigation.
The State undertakes to counteract the challenge of the search’s illegality by the argument that the Constitutional protection against unreasonable searches is a right peculiar to the owner of property attempted to be searched, hence petitioner is in no position here to complain since he did not own the suspect car. This would be a strained construction, or application, of the principle in the immediate case for it would have a holding that although the search of the automobile was invalid, nevertheless the searcher could go into the vehicle and extract the suitcase of a person without any knowledge whatever that the owner of it was engaged in some nefarious enterprise. This argument is illogical and I reject it.
The petitioner in his reply brief claimed further conflict, that is, with a decision of the District Court of Appeal, Second District, in Watson v. State, 134 So.2d 805. This situation developed when his attorney *596 discovered the Watson decision after the filing of the transcript as well as the original petition and brief in the immediate case. The attorneys then wrote a letter to this court requesting that the decision in Watson be considered. The request was vigorously resisted by the Attorney General. Even so, four members of the court, with three, including this writer, dissenting, considered the letter as a motion to amend the petition for certiorari although more than 60 days had passed since the entry of the judgment sought to be reviewed.
Recognizing this view by a majority of the court, I comment that the District Court of Appeal was correct when it held in Watson that a defendant should be permitted to show that he had been acquitted of the very offense in which the prosecution had shown he was inculpated.
In the instant case an accomplice had testified about two other robberies he and the petitioner had committed. But the court ruled inadmissible testimony that petitioner had been acquitted of the charge of one of them. This decision did not coincide with the one in Watson and was, it seems to me, wrong.
I strongly feel that the decision of the District Court of Appeal should be quashed without exploring the effect of holding the petitioner for 105 days in Kilby State Prison in Alabama before advising him of the charge he was to face, and then telling him he was to be prosecuted for transporting stolen property into Alabama.
The final charge was the theft of 128 blank drivers’ licenses, one typewriter and $43.72 in cash. Therefore, there was no chain of circumstances connecting the search of petitioner’s suitcase with, first, the original charge, in Alabama, of carrying a concealed weapon, and then the intervening charge in Alabama of transporting stolen property and, finally, the charge in Florida of stealing blank licenses, cash and a typewriter.
It is to me obvious that the conviction was illegally obtained and that the judgment of the District Court of Appeal affirming the judgment of the Criminal Court of Record of Dade County should be quashed.
THORNAL, C. J., concurs.